IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 26, 2006 Session

JERRY PETERSON, ET AL. v. HENRY COUNTY GENERAL HOSPITAL
DISTRICT, ET AL.

A Direct Appeal from the Circuit Court for Henry County
No. 2524     The Honorable Charles C. McGinley, Judge

No. W2006-01393-COA-R3-CV - Filed December 21, 2006

This is a premises liability case. Plaintiff/Appellant allegedly suffered injuries after slipping in a pool of water that was allowed to stand on the Hospital/Appellee's floor. The trial court ruled that Hospital/Appellee had no actual or constructive notice of the water and entered judgment in favor of Hospital/Appellee. Plaintiff/Appellant appeals. We affirm.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

David A. Riddick of Jackson, Tennessee for Appellants, Jerry and Jean Peterson

John E. Quinn of Nashville, Tennessee for Appellees, Henry County General Hospital District, d/b/a Henry County Medical Center

OPINION

On June 10, 2003, Jerry Peterson went to the Henry County Medical Center office building in order to pick up his wife, Jean (together with Mr. Peterson, the "Petersons," "Plaintiffs," or "Appellants"), from a doctor's appointment. It had been raining earlier in the day, but the rain had subsided by the time Mr. Peterson arrived at the medical center. Upon entering the building, Mr. Peterson fell when he allegedly slipped in a pool of water that was inside the office building entrance. As a result of the fall, Mr. Peterson allegedly suffered injury to his left wrist and shoulder.

On March 29, 2004, the Petersons filed a Complaint against Henry County General Hospital District d/b/a Henry County Medical Center (the "Hospital," "Defendant," or "Appellee"). Henry County, Tennessee was also named as a defendant, but the County was dismissed by Order of March 24, 2005, leaving the Hospital as the sole defendant in this cause. The Complaint alleges, *inter alia*,

that the Hospital breached a duty of care owed to Mr. Peterson in that the Hospital "knew or should have known about the dangerous, slick floor at their place of business." The Petersons asked for $75,000.00 in damages. The Hospital filed its Answer on June 1, 2004, in which it denied the material allegations of the Complaint.

By "Agreed Order" of March 15, 2006, the Hospital was allowed to amend its original answer to include the defenses contained in the Governmental Tort Liability Act ("GTLA"). The amended answer was filed on March 16, 2006. Thereafter, on March 21, 2006, the Petersons moved the court for leave to amend their Complaint to reflect that the case falls under the GTLA because the Hospital is a governmental entity. The Petersons also sought to increase the *ad damnum* clause to $300,000.00 for each plaintiff. On March 27, 2006, the Hospital filed its answer to the Amended Complaint, in which it again denied the material allegations asserted by the Petersons.

The matter proceeded to hearing before the court, sitting without a jury, on March 27, 2006. The trial court ruled from the bench that the Petersons could not recover and dismissed their case with prejudice. The Petersons filed their Notice of Appeal on April 10, 2006 appealing from the "decision of the Henry County Circuit Court on March 27, 2006." The trial court did not enter its Judgment in the case until May 5, 2006. Consequently, the Petersons' Notice of Appeal was prematurely filed. However, Tenn. R. App. P. 4(d) provides that "[a] prematurely filed notice of appeal shall be treated as filed after the entry of the judgment from which the appeal is taken and on the day thereof." The Petersons raise one issue for review as stated in their brief:

> Was there constructive notice to the Defendant of a dangerous condition upon Defendant's premises when water was allowed to remain on the floor for over two hours.

Because this case was tried by the court sitting without a jury, we review the case ***de novo*** upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm absent error of law. ***See*** Tenn. R. App. P. 13(d). Furthermore, when the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues. ***See McCaleb v. Saturn Corp***., 910 S.W.2d 412, 415 (Tenn.1995); ***Whitaker v. Whitaker***, 957 S.W.2d 834, 837 (Tenn.Ct.App.1997). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. ***See id.***; ***see also Walton v. Young***, 950 S.W .2d 956, 959 (Tenn.1997).

The Petersons brought this action pursuant to the Governmental Tort Liability Act ("GTLA"), codified at T.C.A. § 29-20-101, et seq. The provisions codified at T.C.A. § 29-20-204 (2000) apply to the case at bar and read, in relevant part, as follows:

> (a) Immunity from suit of a governmental entity is removed for any injury caused by the dangerous or defective condition of any public

building, structure, dam, reservoir or other public improvement owned and controlled by such governmental entity.

(b) Immunity is not removed for latent defective conditions, nor shall this section apply unless constructive and/or actual notice to the governmental entity of such condition be alleged and proved in addition to the procedural notice required by [T.C.A.] § 29-20-302 (repealed).

This section essentially codifies the common law obligation of owners and occupiers of property. *Lindgren v. City of Johnson City*, 88 S.W.3d 581, 584 (Tenn.Ct.App.2002). In general terms, the common law obligation imposes upon such owners/occupiers a duty to "exercise ordinary care and diligence in maintaining their premises in a safe condition ." *McCormick v. Waters*, 594 S.W.2d 385, 387 (Tenn.1980). This includes an affirmative duty to protect against dangers of which the owner/occupier knows or of which, with reasonable care, it might have discovered. *Id*.

The plaintiff must first demonstrate that there is a "dangerous or defective condition of any public building...owned and controlled by such governmental entity." T.C.A. § 29-20-204(a). The determination of whether a particular location is defective, dangerous or unsafe is a question of fact. *Helton v. Knox County*, 922 S.W.2d 877, 882 (Tenn.1996). In determining if a condition is, in fact, defective, unsafe, or dangerous, our Supreme Court has noted that, with respect to the likelihood of a person sustaining an injury, "probability, not possibility, governs; that it is 'possible'...does not make it dangerous." *Id*. at 883 (quoting *Forrester v. City of Nashville*, 169 S.W.2d 860, 861 (Tenn.1943)).

Liability in premises liability cases stems from superior knowledge of the condition of the premises. *McCormick*, 594 S.W.2d at 387. Therefore, upon finding that a dangerous condition exists, the plaintiff must then demonstrate that the county had either actual or constructive notice of the allegedly dangerous condition. *See* T.C.A. § 29-20-204(b). This may be accomplished in one of two ways. The first method is by demonstrating that the county itself caused or created the condition, therefore imputing notice to the county. *See Sanders v. State*, 783 S.W.2d 948, 952 (Tenn.Ct.App.1989). If an entity other than the owner or operator of the premises created the condition, the plaintiff must show that the owner or operator of the premises had actual or constructive notice of the condition prior to the accident. *Jones v. Zayre, Inc*., 600 S .W.2d 730, 732 (Tenn. Ct. App.1980). "Constructive notice" can be established through proof that the dangerous or defective condition existed for such length of time that, in the exercise of reasonable care, the owner should have become aware of the condition. *Simmons v. Sears, Roebuck & Co.*, 713 S.W.2d 640, 641 (Tenn.1986). However, T.C.A. § 29-20-205 (2000) specifically states that governmental immunity is not removed when the claimed negligence is based on a failure to inspect, to wit:

Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:

*          *          *

> (4) a failure to make an inspection, or by reason of making an inadequate or negligent inspection of any property;

T.C.A. § 29-20-205.

In order to prevail in this case, the Petersons must first show that there was, in fact, a dangerous condition. Turning to the record, there is much dispute as to whether water was even present on the hospital floor. Mr. Peterson testified that he did not see any water on the floor prior to his accident. Martha Laffoon, who is in charge of the Hospital cleaning crew, testified that, immediately following Mr. Peterson's fall, she actually felt the mat and floor and found no water on either. On the other hand, Brian Brewer testified that he noticed water on the floor when he came into the medical building some two hours prior to Mr. Peterson's fall. However, Mr. Brewer could not say for certain that the water was still on the floor at the time he left the building immediately after Mr. Peterson's fall. Furthermore, even if there was water on the floor, there is dispute as to where that water was located. Both Mr. Brewer and Ms. Laffoon testified that Mr. Peterson lay at least partially on the mat after his fall. Mr. Peterson, however, testified that he fell outside Dr. Evans' office door, which was located some ways down the hallway. From our review of the record, the dispute in testimony concerning whether, and where, the water was located could support a conclusion that there was, in fact, no dangerous condition present at the time of Mr. Peterson's fall. However, even if we assume, *arguendo*, that there was water on the floor at the place where Mr. Peterson fell, there is no evidence that the Hospital was directly responsible for the water being on the floor. Furthermore, there is no evidence that the Hospital had actual notice of the alleged dangerous condition. Because the Petersons may not rely upon the Hospital's failure to inspect, the only remaining avenue to support a negligent finding on the part of the Hospital is through the doctrine of constructive notice. The trial court specifically found that the Hospital "did not have ...actual or constructive notice of this water." The Petersons assert that this finding was in error because there was sufficient evidence to establish that the water had been allowed to remain on the floor for at least two hours. We disagree. Although Ms. Laffoon testified that two hours would be too long for water to remain on the Hospital floor, her testimony was hypothetical in that she made no statement that there was actually water on the floor much less that the water had been allowed to remain for two hours. The Petersons rely upon the testimony of Mr. Brewer, who stated that he had seen water on the floor some two hours before the incident. However, Mr. Brewer stated that what water he had seen was just a "trickle" from the mat and was not a "pool" of water as Mr. Peterson suggests. Furthermore, Mr. Brewer testified that, when he left the building immediately after the alleged accident, he could not tell if the water he had seen two hours before was still there. In short, Mr. Brewer's testimony, given the fact that he could not say whether water was on the floor when he left (i.e. at the time of the fall), does not provide sufficient proof of how long any water was allowed to remain on the floor.

The Petersons rely upon *Allison v. Blount Nat'l Bank*, 390 S.W.2d 716 (Tenn. Ct. App.1965) in support of their contention that the Hospital had constructive notice. In *Allison*, the

-4-

plaintiff suffered injury when she slipped and fell at the entrance to the bank. Although the evidence in *Allison* is similar to the case at bar, *Allison* involved the trial court's grant of a directed verdict in favor of the defendant bank. This Court reversed and found that reasonable minds could disagree as to the amount of water on the lobby floor, the length of time the water was present, and whether the presence of water was as apparent to the plaintiff as to the defendant. *Id*. at 719. In the instant case, however, the trial court, as the trier of fact, heard all evidence from both sides, and determined the credibility of the witnesses. As discussed above, the evidence in the record is conflicting concerning whether, and where, the water was located and also concerning how long, if at all, the water remained on the floor. In short, the evidence does not preponderate against the trial court's finding.

The Judgment of the trial court is affirmed. Costs of appeal are assessed against the Appellants, Jerry Peterson and Jean Peterson, and their surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.